GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Charlie Singleton was convicted of sexual battery in violation of Mississippi Code Annotated section 97-3-95(2) (Rev. 2006). He was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections. In addition, Singleton was placed on five years of post-release supervision following his term of confinement. On appeal, Singleton claims that: (1) there is insufficient evidence to support his conviction for sexual battery, and (2) the verdict is against the overwhelming weight of the evidence. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Singleton is the biological father of Kelly.
 
 [1]
 
 Singleton and Kelly’s mother, Bonnie, separated when Kelly was a small child. In July 2002, when Kelly was a teenager, she attended a family reunion in Chicago. At that time, Singleton was living in Chicago, and Bonnie and Kelly lived in Mississippi. While in Chicago, Bonnie, Kelly, and Kelly’s younger half-sister, Lauren,
 
 [2]
 
 went to Singleton’s home. Until this
 
 *744
 
 meeting of Kelly and Singleton, it had been fifteen years since Kelly had seen her father.
 

 ¶3. Shortly after Bonnie, Kelly, and Lauren returned to Mississippi, Singleton called Bonnie and asked if he could leave Chicago and move in with them. Singleton said that he wanted to move to Mississippi and become a father to his daughter. Bonnie agreed, and Singleton moved in with Bonnie and her two daughters.
 

 ¶4. On September 27, 2003, Lauren woke up and looked for Kelly. Kelly was not in her room, so Lauren went to her mother’s bedroom. Through the door to her mother’s bedroom, she saw Kelly lying on the couch wearing no clothes from the waist down. Singleton was holding Kelly’s arms above her head with one hand and one of Kelly’s legs with the other hand. Lauren testified that Singleton had his face in between Kelly’s legs and “had his tongue in between her vagina.”
 

 ¶ 5. Lauren then ran to call her mother who, in turn, called the police. Kelly was taken to the hospital and a rape kit was administered. Dried secretion swabs taken from Kelly’s body tested positive for Singleton’s seminal fluid.
 

 ¶ 6. After Lauren called her mother, Singleton left the house and went to the police station. Eli Perrigin, a detective with the Columbus Police Department, testified that Singleton approached him in the parking lot of the police station. Singleton said that he wanted to press charges against his wife because his thirteen- or fourteen-year-old daughter tried to pull his penis out of his pants. She began to bite on his penis, and before he knew it, he let her do what she wanted to do because “he had to get off.” Singleton also told Detective Perrigin that his daughter did this to everyone else on 7th Avenue, so he might as well let her do it to him.
 

 ¶ 7. Detective Perrigin told Singleton to speak with his supervisor, Casey Freeman. Freeman testified that Singleton said that his daughter, Kelly, came to his bedroom while he was asleep and began to perform oral sex on him. He told her to stop, and she told him to give her five dollars because that is how she got money from other people on their block. Singleton told Freeman that there was not much a man could do when a woman did that to him, so he “finished and that it felt good.” While at the police station, Singleton signed a consent form and a mouth swab was taken that was used to match Singleton’s DNA with the seminal fluid found on Kelly’s body.
 

 ¶ 8. Singleton chose to testify on his behalf at trial. He said that Kelly and Lauren did not want him to live with them because he brought discipline into the house, and he was cramping their style. While he was asleep, Kelly came into his room, and he woke up with her naked body coming down onto his face. Lauren was in the doorway saying that she was going to tell her mother so she would leave Singleton for good. Singleton pushed Kelly away and got up to go to the police station. He denied talking to Detective Perrigin and Freeman, and he denied that his mouth was ever swabbed for DNA.
 

 ¶ 9. Kelly did not testify at trial. Her mother, Bonnie, testified that Kelly had disappeared a few days before the trial started. Bonnie also stated that Kelly suffers from mental disabilities including attention deficit disorder and schizophrenia. Kelly was seventeen years old on the date of the alleged sexual battery.
 

 ANALYSIS
 

 1. Whether there is sufficient evidence to support Singleton's conviction for sexual battery.
 

 ¶ 10. Singleton argues that his motion for a judgment notwithstanding the
 
 *745
 
 verdict should have been granted by the circuit court. Specifically, he claims that there is no reliable evidence in the record to prove the element of penetration. The State responds that Lauren’s eyewitness testimony and Singleton’s statements to the police constitute sufficient evidence to convince a reasonable juror that Singleton was guilty of sexual battery.
 

 ¶ 11. When reviewing the denial of motion for a judgment notwithstanding the verdict on an objection to the sufficiency of the evidence, we examine the evidence in a light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (citation omitted).
 

 ¶ 12. Singleton was charged with sexual battery pursuant to section 97-3-95(2), which states:
 

 A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child’s teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
 

 It is undisputed that Kelly was seventeen years old and that Singleton is Kelly’s father. Thus, the element at issue here is penetration.
 

 ¶ 13. For the purposes of section 97-3-95(2), “ ‘[sjexual penetration’ includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person’s body by any part of a person’s body, and insertion of any object into the genital or anal openings of another person’s body.” Miss. Code Ann. § 97-3-97(a) (Rev.2006). Singleton argues that the only evidence of penetration is Lauren’s statement that Singleton “had his tongue in between her vagina.” Further, he claims that her testimony is unreliable because her statement to the police merely stated that Singleton’s head was between Kelly’s legs.
 

 ¶ 14. However, the reliability of Lauren’s testimony is not an issue for this Court to decide. It is the jury’s responsibility to evaluate the credibility of a witness.
 
 Smith v. State,
 
 821 So.2d 908, 910(¶ 4) (Miss.Ct.App.2002) (citation omitted). “The jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory, and sincerity.”
 
 Id.
 
 (quoting
 
 Ford v. State,
 
 737 So.2d 424, 425(¶ 8) (Miss.Ct.App.1999)). Lauren’s testimony clearly proved penetration; it was the jury’s decision to take this testimony as truth.
 

 ¶ 15. In addition, there is the testimony of Detective Perrigin and Freeman. Singleton told both police officers about instances where Kelly performed oral sex on him. Those instances alone would constitute sexual battery. Viewing all of the evidence in a light most favorable to the State’s case, we find that a rational jury could find, beyond a reasonable doubt, that penetration occurred. Accordingly, this issue has no merit.
 

 2. Whether the jury’s verdict is a,gainst the overwhelming weight of the evidence.
 

 ¶ 16. Singleton claims that the jury’s guilty verdict is against the overwhelming weight of the evidence. Again, he argues that “[n]one of the evidence shows penetration which is a required element of sexual battery.”
 

 
 *746
 
 ¶ 17. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844(¶ 18). The evidence is weighed in the light most favorable to the verdict.
 
 Id.
 
 The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
 
 Id.
 
 If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial.
 
 Id.
 

 ¶ 18. Singleton argues, just as he does in issue one, that Lauren’s testimony is unreliable because her statement given to the police did not contain her statement at trial that Singleton had his tongue in between Kelly’s
 
 vagina.
 
 Again, this issue of reliability was one for the jury.
 

 ¶ 19. He further claims that the DNA evidence did not prove penetration and was confusing to the jury. This statement is completely correct-the DNA evidence only proved that Singleton’s seminal fluid was found on Kelly’s body. That does not constitute penetration under section 97-3-97. However, the jury was presented other evidence of penetration through Lauren’s eyewitness testimony and the testimony of the Columbus police officers.
 

 ¶ 20. We find that the verdict was not against the overwhelming weight of the evidence and allowing the verdict to stand will in no way result in an unconscionable injustice. Thus, this issue has no merit.
 

 ¶ 21. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . The name of the minor child has been changed to "Kelly” to protect her identity.
 

 [2]
 

 . The name of the minor sibling has been changed to "Lauren” to protect the identity of the victim.